IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | | |
|---|---|---|
| AMARI MITCHELL, | § | |
| | § | |
| *Plaintiff,* | § | Case No. _____ |
| | § | |
| v. | § | Jury Demand |
| | § | |
| ORANGE COUNTY, FLORIDA, | § | |
| CLAUDY EDMOND, | § | |
| DAVID GUZMAN, | § | |
| RICHARD SAMUELS, and | § | |
| JOHN DOES 1-15, | § | |
| | § | |
| *Defendants.* | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiff Amari Mitchell, complaining of Defendants Orange County, Florida, Claudy Edmond, David Guzman, Richard Samuels, and John Does 1-15, and for cause would respectfully show the Court as follows:

### I.    NATURE OF THE ACTION

1.    Plaintiff was brutally assaulted by sheriff deputies Claudy Edmond, David Guzman, and Richard Samuels while incarcerated at the Orange County Jail. Defendants, acting under color of law, assaulted Plaintiff while he was handcuffed and restrained. Plaintiff was not threatening deputies or otherwise posing any threat of harm to any persons prior to being assaulted. Defendants kicked and stomped Plaintiff's head and body while he was handcuffed on the floor and defenseless. No justification for physical force was necessary when Plaintiff was handcuffed and restrained.

2.      This is an action brought by Plaintiff against Defendants for their use of excessive force under the color of state law resulting in Plaintiff's injuries in violation of his rights under the Fourth Amendment of the United States Constitution secured pursuant to 42 U.S.C. § 1983.

3.      Plaintiff further asserts claims under state law for intentional infliction of emotional distress, assault, and battery against Defendants Edmond, Guzman, and Samuels.

4.      Plaintiff alleges that Orange County, the Orange County Sheriff's Office ("OCSO") and its Policymakers, specifically Sheriff John Mina and the Board of County Commissioners, failed to properly train, supervise, screen, discipline, transfer, counsel, or otherwise properly equip and control sheriff deputies including those who are known, or who should have been known, to engage in the use of excessive force. Further, Orange County failed to properly implement training and policies governing the appropriate use of non-lethal force on inmates in the Orange County Jail.

5.      The Policymakers had a duty, but failed to implement and/or enforce policies, practices and procedures for the Orange County Jail that respected Plaintiff's constitutional rights to protection under the law. This duty was delegated to the Sheriff to carry out the actions and policies of the Board of County Commissioners by overseeing the day-to-day operation of the Orange County Jail.

6.      Orange County and its Policymakers' failure to adequately supervise, discipline, and train the individual deputy defendants, failure to implement the necessary policies and procedures, and affirmative implementation of unconstitutional policies caused Plaintiff's unwarranted and excruciating physical and mental anguish and injuries.

7.　　The deputy defendants acted in an objectively unreasonable manner and disregarded the rights of Plaintiff, knowing that the County and Policymakers would approve and/or ratify their actions.

8.　　For these civil rights violations and other causes of action discussed herein, Plaintiff seeks redress and compensation for damages in his unjustified assault.

## II.　PARTIES

9.　　Plaintiff, Amari Mitchell, is an adult individual and resident of the State of Florida.

10.　　Defendant, Orange County, Florida (hereinafter "the County"), is a governmental entity duly organized and existing under the laws of the State of Florida. It may be served through its County Mayor, Jerry L. Demings, at 201 S. Rosalind Avenue, 5th floor Orlando, Florida 32801, or wherever he may be found.

11.　　Defendant, Claudy Edmond, is and/or was a deputy sheriff with the Orange County Sheriff's Office. At all times material hereto, Defendant Edmond was acting under color of law. He may be served through the Orange County Sheriff's Office at 3723 Vision Blvd, Orlando, Florida 32839, or wherever he may be found.

12.　　Defendant, David Guzman, is and/or was a deputy sheriff with the Orange County Sheriff's Office. At all times material hereto, Defendant Guzman was acting under color of law. He may be served through the Orange County Sheriff's Office at 3723 Vision Blvd, Orlando, Florida 32839, or wherever he may be found.

13.　　Defendant, Richard Samuels, is and/or was a deputy sheriff with the Orange County Sheriff's Office. At all times material hereto, Defendant Samuels was acting under color

of law. He may be served through the Orange County Sheriff's Office at 3723 Vision Blvd, Orlando, Florida 32839, or wherever he may be found.

14.     Defendants, John Does 1-15, is and/or was a deputy sheriff with the Orange County Sheriff's Office. At all times material hereto, Defendants were acting under color of law. They may be served through the Orange County Sheriff's Office at 3723 Vision Blvd, Orlando, Florida 32839, or wherever they may be found.

### III.     JURISDICTION AND VENUE

15.     Jurisdiction exists in this Honorable Court pursuant to 28 U.S.C. §§ 1331 and 1343 as this action is brought pursuant to 42 U.S.C. § 1983 to redress a deprivation of the Eighth Amendment rights of Plaintiff. Plaintiff further invokes the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367 to adjudicate pendent state law claims.

16.     Venue is proper in this Court as Defendants' constitutional violations and intentional torts and otherwise violative conduct occurred within the Middle District of Florida, Orlando Division.

17.     Plaintiff has exhausted his administrative remedies.

### IV.     FACTS

18.     On or about March 21, 2024, Deputy Samuels entered Plaintiff's cell at the Orange County Jail. Deputy Samuels instructed Plaintiff to get down from the top bed bunk and asked Plaintiff, "What is with all of that shit you've been talking?" Deputy Samuels had previously told Plaintiff that he was going to "fuck him up" next time he saw Plaintiff.

19.     Plaintiff did not want to get down from his bunk, fearful that Deputy Samuels would begin beating him. Deputy Samuels repeated his statement that he wanted Plaintiff to come down from his bunk. Deputy Samuels was intent on fighting Plaintiff – in fact, Deputy

---

Samuels even removed his pepper spray and taser from his utility belt and handed it to a deputy behind him. Plaintiff reluctantly complied with Deputy Samuels's command to get down, although the command was unwarranted and served no legitimate purpose other than to harass and threaten Plaintiff.

20.    Once Plaintiff got down from the bunk, Deputy Samuels aggressively swung his arm towards Plaintiff's face and missed. The force of the missed swing was enough to cause Deputy Samuels to lose his balance and hit his head on the edge of the bunk bed. When other deputies arrive to Plaintiff's cell, they asked what had happened. Deputy Samuels told the first deputy that his leg had went out and he collapsed in the cell. Deputy Samuels told another deputy that he had slipped and fell. Deputy Samuels later changed his story and claimed that he had been assaulted by Plaintiff. However, if Deputy Samuels had indeed been assaulted by an inmate then he or another deputy could have and should have called "code" to immediately control an aggressive inmate.

21.    Plaintiff was placed in a different cell and subsequently handcuffed by Deputy Edmond and another deputy. On information and belief, Deputy Edmond and Deputy Guzman then began to transport Plaintiff to another cell in the facility. Deputy Edmond pulled Plaintiff's hair and whispered, "I'm fixing to beat your ass." Deputy Edmond, Deputy Guzman, and John Doe 1 then take Plaintiff to the second floor of the jail, which is the medical floor. Deputies chose to take Plaintiff to this floor in order to avoid the cameras that would be monitoring their actions.

22.    Deputy Edmond begins by punching Plaintiff in the face while he is handcuffed, compliant, and not resisting. After this first strike, Deputies Edmond, Guzman, and John Doe 1 begin to violently punch, kick, and stomp on Plaintiff's face, head, and body. Plaintiff lied

helplessly on the floor as he was attacked. Plaintiff screamed and cried for help, but no other deputy intervened to prevent the attack from continuing.

23.    The deputies then take Plaintiff back into the elevator and to the sixth floor of the jail. On the sixth floor, Plaintiff became surrounded by approximately 15 deputies. On information and belief, Deputy Guzman threw Plaintiff on the ground as John Does 1-15 surrounded Plaintiff and watched him collapse to the floor. The deputies then observed Deputy Edmond slap Plaintiff in the face. None of the deputies intervened to stop the assault.

24.    Plaintiff was not taken to the medical unit after this vicious assault. Instead, he was placed in an isolation cell. Later that night Plaintiff was unable to breathe due to the bruising and pain in his ribs, so he was finally taken to the medical unit.

25.    On information and belief, Deputy Edmond was fired for his conduct during this incident.

## V.    CAUSES OF ACTION

### COUNT I – 42 U.S.C. § 1983
### EXCESSIVE FORCE – EIGHTH AMENDMENT
### AGAINST DEFENDANTS EDMOND, GUZMAN, SAMUELS, JOHN DOES 1-15

26.    Plaintiff incorporates by reference all previous paragraphs as if fully set forth herein.

27.    Plaintiff would show that the actions of each of the Defendants named in this Count on the date at issue in this Complaint deprived Mitchell of his constitutional rights.

28.    Plaintiff would show that at all times material hereto, the Defendants had a duty to avoid infliction of unjustified bodily injury to Plaintiff, to protect his bodily integrity and to not trample on his constitutional rights.

29.     Plaintiff would show that the Deputy Defendants failed to act as objectively reasonable officers would have acted in the same or similar circumstances. That is, the Deputy Defendants, without legal or necessary justification or the need to do so, used excessive force as described above and caused severe and lasting physical injury to Plaintiff.

30.     The individual Defendants named herein witnessed and directly participated in the conduct resulting in Plaintiff's injuries by applying unreasonable, unnecessary, and excessive force to the Plaintiff while he was handcuffed and restrained, and surrounded by multiple law enforcement officers, and took no action to stop the wrongful and unconstitutional conduct of the other Defendants.

31.     Plaintiff would show that the Deputy Defendants denied Plaintiff his right to be free from the use of excessive force in violation of the Eighth Amendment to the United States Constitution.

32.     The actions by Deputy Defendants taken on that day were not objectively reasonable because they were designed to inflict excessive force in restraining an individual in a non-threatening situation that included several deputies and a handcuffed plaintiff.

33.     The unjustified and excessive force used by the Deputy Defendants was not reasonable, nor was it necessary under the circumstances. Plaintiff was handcuffed and not threatening any deputy. When Plaintiff was handcuffed and helpless, he continued to be assaulted with no reasonable justification.

34.     Defendants used force maliciously and sadistically for the purpose of causing harm.

35.     The force used by the Deputy Defendants was objectively unnecessary, excessive and unreasonable under the circumstances, as Plaintiff did not pose an immediate threat

to the safety of the Deputy Defendants or others. The Deputy Defendants embarked on a willful, malicious, reckless and outrageous course of conduct that was intended to cause and, in fact did cause Plaintiff to suffer extreme and severe  physical pain and injury, as well as mental and emotional distress, anxiety, terror and agony.

36.    As a result of the conduct by the Deputy Defendants, Defendants are liable to Plaintiffs for his injuries and resulting damages, either because they were integral participants in the use of excessive force or because they failed to intervene to prevent these violations.

**COUNT II – 42 U.S.C. § 1983**
**FAILURE TO INTERVENE**
**AGAINST DEFENDANTS EDMOND, GUZMAN, SAMUELS, JOHN DOES 1-15**

37.    Plaintiff incorporates by reference all previous paragraphs as if fully set forth herein.

38.    During the events at issue, Deputies Edmond, Guzman, and Samuels used unconstitutional excessive force against Mitchell, violating Mitchell's rights under the United States Constitution.

39.    The Defendants named in this Count were present for the use of force and observed (or otherwise knew of) the unconstitutional force being used against Mitchell.

40.    The Defendants named in this Count were in a position to intervene to prevent or stop the unconstitutional use of force, including having a realistic opportunity to do so.

41.    Despite being in a position to intervene, Defendants failed to take reasonable steps to prevent or stop the unconstitutional use of force.

42.    Under the Eleventh Circuit, an officer who is present and in a position to intervene may be held liable under § 1983 for failing to intervene to stop another officer's

---

unconstitutional excessive force. The duty to intervene to stop excessive force was clearly established at the time of the events.

43.    As a direct and proximate result of Defendants' failure to intervene, Mitchell suffered damages.

## COUNT III – 42 U.S.C. § 1983 MUNICIPAL LIABILITY
## AGAINST ORANGE COUNTY, FLORIDA
## UNCONSTITUTIONAL CUSTOM, POLICY, OR PRACTICE

44.    Plaintiff incorporates by reference all previous paragraphs as if fully set forth herein.

45.    On and for some time prior to March 21, 2024 (and continuing to the present date) Defendant County and the OCSO deprived Plaintiff of the rights and liberties secured to him by the United States Constitution, in that said Defendant and their supervising, and managerial employees, agents, and representatives, acting with gross negligence and with reckless and deliberate indifference to the rights and liberties of the public in general, knowingly maintained, enforced and applied an official policy recognized by the County and the OCSO.

46.    The Deputy Defendants were acting under color of law.

47.    The Deputy Defendants acted pursuant to an expressly adopted official policy or a longstanding practice or custom of the Defendant County.

48.    Defendant County, together with its Policymakers, including the County Commissioners and supervisors maintained, inter alia, the following unconstitutional customs, practices, and policies:

    a.  Using excessive force;

    b.  Providing inadequate training regarding the use of force;

    c.  Providing inadequate training regarding the de-escalation of force;

d.  Employing and retaining as law enforcement officers those who Defendant County and the OCSO, at all times material herein, knew or reasonably should have known had dangerous propensities for abusing their authority and for mistreating prisoners through assault and excessive use of force;

e.  Inadequately supervising, training, controlling, assigning and disciplining law enforcement officers who Defendant knew, or in the exercise of reasonable care, should have known had the aforementioned propensities and character traits;

f.  Employing and retaining officers who have been known to be abusive;

g.  Maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling the intentional misconduct by those who are law enforcement officers;

h.  Failing to adequately discipline law enforcement officers for the above-referenced categories of misconduct and discipline that is so slight that is tantamount to encourage misconduct;

i.  Having and maintaining an unconstitutional custom and practice of using excessive force and covering up police misconduct. These customs and practices by the County and the OCSO were condoned by Defendant in deliberate indifference to the safety and rights of prisoners, including the Plaintiff.

j.  By reason of the aforementioned policies and practices of Defendant County, the OCSO and their Policymakers, Plaintiff experienced severe pain and suffering for which he is entitled to recover damages. The aforementioned acts and omissions also caused Plaintiff's pain and suffering.

k. Defendant County and the OCSO together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the different policies, practices, and customs alleged in the paragraphs above. Despite having knowledge as stated above, Defendant County encouraged, condoned, tolerated and through actions and inactions ratified such policies. Said Defendant also acted with deliberate indifference to both the foreseeable effects and consequences of these policies and to the constitutional rights of Plaintiff, and other individuals similarly situated.

l. By perpetuating, sanctioning, tolerating, and ratifying the outrageous conduct and other wrongful acts, Defendant County and the OCSO acted with an intentional, reckless, callous disregard for the well-being of Plaintiff and his constitutional and human rights. Defendant's actions were willful, wanton, malicious, fraudulent, and extremely offensive and unconscionable to any person of normal sensibilities.

m. Furthermore, the policies, practices, and customs implemented, maintained and still tolerated by Defendant County and the OCSO were affirmatively linked to, and were a significantly influential force behind the Plaintiff's injuries.

## COUNT IV – 42 U.S.C. § 1983 MUNICIPAL LIABILITY
## AGAINST ORANGE COUNTY, FLORIDA
## FAILURE TO TRAIN

49. Plaintiff incorporates by reference all previous paragraphs as if fully set forth herein.

50. Orange County is liable for all damages suffered by Plaintiff pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) and 42 U.S.C. § 1983 based on an official policy or

custom of the OCSO of which the County Commissioners and the sheriff all had actual or constructive knowledge that was a moving force behind the constitutional violations alleged herein.

51.    The conduct of the Deputy Defendants as set forth in the preceding paragraphs evinces the excessive and unreasonable use of force in violation of Plaintiff's constitutional rights.

52.    The conduct set forth supra evinces a custom of using excessive or improper force, a lack of policies and training instructing deputies on the appropriate manner in which to handle individuals through non-lethal tactics, including those that are handcuffed, and including the use of tasers, strikes to the head and body of detainees, knee thrusts to the face, head and body, headlocks/chokeholds and restricting the breathing of detainees when no immediate risk of harm is posed to deputies or the public.

53.    With respect to the claims made the basis of this lawsuit, the County and the OCSO failed to adequately train, supervise or discipline its employees regarding the unnecessary use of excessive force. The failure to train, supervise or discipline its employees in a relevant respect reflects a deliberate indifference on the County and OCSO to the rights of the jail's inhabitants and is actionable under 42 U.S.C. § 1983.

54.    Defendant County developed and maintained a policy of deficient training of its jail police force in the appropriate use of force against inmates who are not resisting. The County's training is designed and implemented by the OCSO and the County to act in this regard.

55.    The County and OCSO's failure to provide adequate training to its sheriff deputies regarding the use of excessive force reflect deliberate indifference by the Policymakers

and reckless and conscious disregard for the obvious risk that officers would use excessive on inmates and made the violation of Plaintiff's constitutional rights, including his severe injuries, a reasonable probability.

56. Deputy Defendants were acting under the color of law and acting pursuant to customs, practices and policies of the County and the OCSO in regards to the use of excessive force as authorized and/or ratified by the Policymakers, specifically the sheriff and the County when they deprived Mitchell of rights and privileges secured to him by the United States Constitution and by other laws of the United States, by the County failing to provide proper training in the use of excessive force in violation of 42 U.S.C. § 1983 and related provisions of federal law and in violation of the above cited constitutional provisions.

57. On information and belief, Defendant County and the OCSO, acting through official policies, practices, and customs, and with deliberate, callous, and conscious indifference to the constitutional rights of Plaintiff, failed to implement and/or enforce the policies, procedures; and practices necessary to provide constitutionally adequate protection and assistance to Plaintiff and implemented policies, procedures, and practices which actually interfered with or prevented Plaintiff from receiving the protection, assistance and care he deserved.

58. For instance, the following conduct, policies, and customs, *inter alia*, by Defendant violated Mitchell's constitutional rights:

    a. The inadequacy of OCSO's policies, training, supervision or discipline relating to the use of excessive force;

b. The inadequacy of OCSO's policies, training, supervision or discipline relating to the use of non-lethal force and tactics, including the use of closed-first strikes, use of headlocks/chokeholds, and kneeling on suspects;

c. The adoption of completely subjective continuum of force policy that can be expressly avoided and which leaves the use of excessive force exclusively to the unchecked discretion of officers on the scene;

d. The adoption of a policy that allows officers to use the degree of force that the officer feels brings the situation quickly under control as per his or her individual judgment even if that method is excessive force;

e. Lack of training in regard to effective communication with inmates while giving them commands and determining their compliance.

f. Using excessive force against Mitchell although he caused no immediate threat; and

g. Using excessive force against Mitchell while he was detained and not resisting.

59. The County's failure to properly train, supervise and discipline its police officers regarding the use of force was the proximate cause of the violation of Mitchell's constitutional rights.

## COUNT V – 42 U.S.C. § 1983 MUNICIPAL LIABILITY
## AGAINST ORANGE COUNTY, FLORIDA
## FAILURE TO SUPERVISE AND/OR DISCIPLINE

60. Plaintiff incorporates by reference all previous paragraphs as if fully set forth herein.

61. On Plaintiff's governmental liability claim against the County for failing to supervise and/or discipline its officers for prior violations and the resulting lack of supervision:

a. The County failed to adequately supervise and/or discipline its employees in handling usual and recurring situations with which they deal;

b. The County was deliberately indifferent to the need to supervise and/or discipline its officers and/or employees adequately;

c. The failure to adequately supervise and/or discipline its officers proximately caused the deprivation of Mitchell's constitutional rights; and

d. The County failed to adequately supervise and/or discipline the Deputy Defendants for assaulting Mitchell for no lawful reason, resulting in the severe injuries to Mitchell.

62. Despite having knowledge of the Deputy Defendants' violations of the policies and other best police practices as described above, the County and the OCSO failed and/or refused to adequately discipline the Deputy Defendants. The County's Policymakers were well aware of the out-of-control behavior of the Deputy Defendants but have failed to take any actions. The County's failure to adequately supervise and/or discipline its deputies was therefore the moving force behind Plaintiff's damages.

## COUNT VI – ASSAULT AND BATTERY STATE LAW CLAIM AGAINST DEFENDANTS EDMOND, GUZMAN, SAMUELS

63. Plaintiff incorporates by reference all previous paragraphs as if fully set forth herein.

64. On March 21, 2024, Deputy Defendants, while acting within the course and scope of their duties as law enforcement officials for the OCSO, without provocation, necessity or legal justification, assaulted and battered Plaintiff by repeatedly punching, kicking, and slapping Mitchell while he was handcuffed and being restrained with unreasonable and excessive force and violence, thereby causing Mitchell's injuries as herein described.

PLAINTIFF'S ORIGINAL COMPLAINT                                                      PAGE 15

65.     Defendants each committed the aforementioned acts and omissions knowingly, willfully, maliciously and with the expressed intent to harm Mitchell and conscious or reckless disregard for the harm that resulted from the assault. By reason thereof, Plaintiff seeks punitive and exemplary damages from Defendants, in an amount according to proof at trial.

## VI.    DAMAGES

66.     Plaintiff incorporates by reference all previous paragraphs as if fully stated herein.

67.     **Actual damages.** Defendants' acts and/or omissions were a proximate cause and the moving force behind the following actual damages suffered by the Plaintiff and Defendants should be held jointly and severally liable for the following damages:

    a.  **Amari Mitchell (Excessive Force)**

        i.  Actual Damages;

        ii.  Disfigurement;

        iii.  Conscious pain and mental anguish suffered by Amari Mitchell;

        iv.  Mental anguish and emotional distress sustained as a result of Defendants' excessive force.

68.  **Punitive/Exemplary Damages against all Defendants.** Punitive/exemplary damages are recoverable under section 1983 when the conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others. Here, the conduct of the Deputy Defendants was done with evil motive or intent, or at the very least, was reckless or callously indifferent to the federally protected rights of the Plaintiff. As such, Plaintiff requests punitive and exemplary damages to deter this type of conduct in the future.

69.     Prejudgment and post judgment interest.

70.    Costs of court.

71.    Reasonable and necessary attorney's fees incurred by the Plaintiff through trial, and reasonable and necessary attorney's fees that may be incurred by Plaintiff for any post-trial proceedings, or appeal, interlocutory or otherwise, pursuant to 42 U.S.C. § 1988.

72.    Plaintiff seeks unliquidated damages in an amount that is within the jurisdictional limits of the court.

## VII.    TRIAL BY JURY

73.    Plaintiff respectfully requests trial by jury.

## VIII.    PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendants be cited to appear and answer herein; that upon final trial hereof Plaintiff has and recover judgment from Defendants; actual damages, exemplary damages, punitive damages, pre-judgment interest at the legal rate; interest on said judgment at the legal rate; costs of court; and such other and further relief, both general and special, at law and in equity, to which Plaintiff may show himself justly entitled.

Respectfully Submitted,

/s/ Heiko Moenckmeier
HEIKO MOENCKMEIER
FL. Bar No. 46226
The Law Firm of Heiko G. Moenckmeier, LLC
836 Highland Ave.
Orlando, FL 32803
Ph: 407-504-1384

**ATTORNEY FOR PLAINTIFF**